The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Thomas M. Harris presiding. All right, good afternoon, counsel. This is case number 4-24-0906, Raymond Mowen v. Jamie Kelly. Counsel, could you state your appearances? First, for the appellant. Good afternoon, your honors. John Hawk for appellant Jamie Kelly. Thank you, and for the appellee. Good afternoon, William Meckes for appellee Raymond Mowen. Okay, thank you. Mr. Hawk, you may proceed with your argument. Thank you. May it please the court, counsel, this appeal stems from joint or cross motions for summary judgment that were before the circuit court in Pike County, Illinois. My client, Jamie Kelly, had filed a motion for summary judgment. Mr. Meckes' client, Raymond Mowen, filed also a motion for summary judgment. We believe that was a proper way to dispose of this matter in which the facts are largely not in dispute. Because of the nature of those motions, I believe this court reviews this matter de novo. The appellee, Raymond Mowen, filed this action originally in the trial court to prevent my client, Jamie Kelly, from receiving two ERISA-based retirement accounts, which consisted of a pension and a 401K. Those accounts actually originally belonged to Raymond Mowen's son, Matthew Mowen, my client's former spouse. My client, Jamie Kelly, and Raymond Mowen's son, Matthew Mowen, were divorced in 2015 and Matthew passed away in 2022. Raymond Mowen now steps into the shoes of the estate to prosecute this claim. The fact pattern is not complex. For whatever reason, my client remained the designated beneficiaries of Matthew Mowen's 401K and pension. When this was discovered in 2022, Raymond Mowen interceded and filed a multiple count action to prevent my client from receiving those funds. This litigation stemmed from that fact pattern. The trial court issued a written ruling after hearing arguments and taking evidence related to the motions for summary judgment. So, we have that as part of the record. Within that, the trial court found that the parties waived certain interests, which I will get into in these accounts. More specifically, that my client waived those pursuant to the language of the divorce decree. Neither myself or Mr. Meckes were involved, to my knowledge, in the original divorce proceeding. So, we're coming in after the fact. Another argument was also proffered and is before the court today related to whether certain acts that I'll generically refer to and reference more later, the trust acts, automatically revoked these beneficiary designations. The trial court did not rule or really consider those. It found that there was a waiver provision in the divorce decree that prevented it or eliminated the necessity of ruling based on such provisions. We have filed this appeal based on the error of the trial court in determining that specific language within divorce decree amounted to a waiver of my client's beneficiary or expectancy interest in the accounts. I think both parties have agreed that my client did possess those to the extent that she was the designated beneficiary in 2022. That was not disputed. The question is, does she retain that interest? Counsel, did the trial judge indicate, when he said there was a waiver, did he indicate what he was looking at? In my opinion, he did not, Your Honor. I can only assume it was what is being suggested by the appellee. It made it difficult to respond and even draft the appeal, and I point that out in my brief, is that we don't have that exact language before us to know for sure where he found this waiver. I can only assume it wasn't the only language argued by the appellee at trial level. Okay, thank you. I first turned to the trust act and ERISA claims. I think those can be dealt with more swiftly and really aren't at the heart of this matter. There are two acts in Illinois that apply to trust that are automatically revoked upon the dissolution of marriage of parties. That's statutory. Such acts, however, do not apply to this case because the 401k and the pension were not trusts. They are simply retirement accounts. The case law cited in the estate of Davis references an IRA that was placed inside of a trust, and there is various language in there talking about analyzing this IRA that was found a trust in that instance. However, if it were the case that essentially all retirement accounts such as these were deemed trusts, that would be an expansive interpretation of the two acts that I referenced and are referenced by the appellee, and essentially that when the parties are divorced, every retirement account designation would be revoked as to the designated officiary, which is not what those acts seek to do. Secondly, even if they did, ERISA would intercede and preempt such application in this instance from an Illinois statute that would intercede and prevent the plan provider or administrator from transferring those funds to the designated beneficiary. That's where ERISA steps in and says federal law, no, you have to give that money to the designated beneficiary. Now, the federal law, which is interesting and cited by both parties, it does leave open the question, and in some circuits where there's maybe a slight split, that you can then assert a state law claim, which is what has occurred here. In other words, and as I will get to, a party can waive that interest in a divorce decree. However, that did not happen here. We have a very simple judgment of dissolution that was made a part of the pleadings here, and we also have really good case law, I feel, in the state of Illinois on the analysis the courts to undertake in determining whether there was a waiver of what they refer to as a beneficiary or expectancy interest. That's a two-factor test. In the Hebert Court, which is one of the more recent cases, they look at two factors. One was the account that was allegedly waived specifically mentioned, and two, was it specifically waived? In other words, was the beneficial or expectancy interest specifically waived? The case law, in multiple cases, talks about that there needs to be some sort of specific and a clear expression of a waiver or surrender of that beneficiary interest. And that's an interest that she had. She doesn't have to reserve it in the divorce decree. She has it as long as she remains a designated beneficiary. Now, when they say it has to be a specific waiver, it can be general in nature. It can say any and all interests of any type whatsoever. Standard language that is in most honest divorce decrees that you might get from ICL or any other model that's best practices in the state of Illinois usually has provisions in it that waive such interests. This one does not. This one has the only language in it that could even be considered or is being, I guess, to be argued, I would argue it can't even be considered as such to amount to a waiver. It is this language in the judgment where it talks about the Mr. Moen is to receive any stocks, bonds, investments, pension, profit sharing, or 401k account in his name alone. And I think it has to be read that way. I may have some slight benefit in this or was caught somewhat by surprise in the arguments because being a former divorce practitioner and dealing and seeing these types of judgments, I know what that language was utilized for. That's not evidence that I can necessarily put in as my own anecdotal observations. But what's happening here is that the drafters are attempting to define what stocks, bonds, investments, pension, profit sharing plans. In other words, any that Matthew Moen held in his name alone. Likewise, my client was granted the ones in her name alone. It's not a designation of how he's to hold the account. It simply identifies which ones he's getting. Because if you remove that language, then it really just says he's awarded any stocks, bonds, investments, pension, profit sharing, or 401k account without any, we don't have account numbers, anything like that. And that goes to that second factor I talked about, about a specific waiver. I argue there is no waiver at all present within this judgment anywhere. And quite frankly, there's lots of broad boilerplate terms that aren't included in this judgment. And this is a case where those provisions matter. While I didn't, and if the court would be, take that they would want to observe or dig in more for as far as interpreting the language of divorce decree, which I believe is where the inquiry stops because we have one that is a clear expression. In paragraph O of the judgment, that language is utilized again, and that when it's defining what debts are to be paid, and it says he shall pay debts in his names alone, which I think further leads that that phrase is being used to identify what debts are being paid, what accounts are to be received, not how they will be paid or how they will be owned in the future. Of course, usually don't reach out and dictate that to someone. And so I think the second factor completely fails. There was no attempt to if there was, it was completely inadequate. As far as the asset being adequately identified, it mentioned stocks, pensions. I think that that burden is clearly referenced, I think, in the judgment, not specifically, but enough to know he was awarded those accounts in his own name. I guess that's if the language in his own name is used to identify which accounts he was received, that burden is probably met. But there is absolutely no waiver that would sustain the trial court's ruling that there was this broad waiver and that it was clearly the party's intent. We don't really have to get into any kind of intent analysis. We can see directly from the judgment itself, it failed to waive it, therefore she retains it, and she should receive such accounts, especially in light of this court's review of de novo, and that the broad waiver language is non-existent, and it failed. I believe that's the extent of my argument, opening argument on the matter, Your Honor. Okay, you'll have time in rebuttal. Mr. Mackus, you may proceed with your argument. Thank you, and may it please the court and counsel. As referenced by Mr. Hawk, Raymond Mowen, the decedent's father and contingent beneficiary on the two retirement accounts, initiated this action and believes there are two independent bases why the retirement funds should be paid to the contingent beneficiary, Mr. Raymond Mowen, and those are, one, the terms of the divorce decree itself, and then, two, what Mr. Hawk had referred to as the Illinois Trust Acts, the Illinois Trust Code, and before that, the Illinois Marriage and Dissolutions of Marriages Act. Regarding the divorce decree, a reviewing court's job here is to try to discern the primary objective, or the intent, of the parties and to give effect to that intent, and different courts in Illinois have employed different tools of analysis to help discern that intent, but the goal is always to try to determine the intent and then give effect to it. So, I have some questions I want to ask you about this case. Is my understanding correct that the deceased, Matthew Mowen, and the appellant, Jamie Kelly, were married in December 2005? Yes, Your Honor, that's correct. Okay, and it was during their marriage, the decedent filled out beneficiary forms designating the defendant as the primary beneficiary of his 401 retirement plan and group retirement plan, and Jamie Kelly is the second beneficiary, is that correct? So, they were married in 2005, and a few years after their marriage, Mr. Mowen, the decedent, Matthew Mowen, designated his then-wife, Jamie Kelly, the appellant in this case, as the primary beneficiary of both of those accounts, and designated his father, the plaintiff in Appalee, as the contingent secondary beneficiary. That is correct. Thank you for correcting me, I misspoke. So, she was the primary beneficiary and he was the secondary beneficiary, is that correct? That is right. Okay, so, in July 2015, 10 years after they were married, they were divorced, and that's when the trial court awarded the decedent any pension or 401k accounts in his name alone, is that right? That is right. Okay, is my understanding correct that then from that point on, he was the sole owner of these accounts and could do with them as he wished? That is right. Okay, seven years later, he died, is that right? In August of 2022? Yes, that's right. Okay, well, so my question is this, during that seven-year period, if he had wished, as the sole owner of these accounts, he could have changed the designation of the beneficiary, could he not? Yes, he could have. And had he changed the designation of beneficiary, make his father the primary beneficiary, that would have been binding? I believe so, yes. So, it seems to me that what we're being asked to do in this case is to overlook the fact that for seven years, the decedent could have done this and didn't, and instead to somehow view what happened in 2015, the divorce is undercutting the control he had over these retirement plans, isn't that correct? Isn't that what you're asking? Yes, Your Honor, we are asking that the court award the proceeds of the retirement accounts to the contingent beneficiary, Raymond Mallon, the decedent's father. Well, a couple of problems I have with that is first, wouldn't our doing that suggest that somehow the decedent had less than total control over the retirement plans post-divorce? Well, it's the appellee's position, Your Honor, that it was an oversight that the decedent, Mr. Matthew Mallon, neglected to change the beneficiary designations on the retirement accounts, but we believe that there's a legal authority- Well, pause it right there for just a moment. Yeah. You may be right that it was an oversight, but essentially, isn't this situation the equivalent to one in which a decedent has control over property he owns and dies and could have provided for its disposition in various ways, but didn't? What's the old story? You may not write a will, but if you don't, the state's got a will for you. The point being, the decedent, it could have been an oversight, but maybe it wasn't, or the decedent, like a lot of people, thought he'd live forever and didn't need a will or to address any of these other things. Given that this is his property, how can we just assume that it's an oversight and disregard the fact that he owned it and could deal with it as he wished? Well, Your Honor, it's the appellant's position that the divorce decree, the pretrial affidavit in the divorce, the testimony from the final hearing in the divorce proceedings, and Ms. Kelly's deposition testimony in this case, all indicate that it was everyone's intention that Matthew Mowen, the decedent, retain all interests in his retirement account, that Ms. Kelly, Jamie Kelly, the appellant, retain all interests in her account. Unfortunately, this situation, this is not the first time that this has happened in the state of Illinois. It's my understanding of the case law and relevant legal authority that if the court determines that it was the intent of the parties as part of that divorce, that they retain their own retirement accounts in their name, then that divorce decree is enforceable and that the ex-spouse, whatever interest he or she may have had, is extinguished. So that's based on the divorce decree. But also, under these two acts in Illinois, they treat the ex-spouse as having pre-deceased the other ex-spouse. And so the accounts are awarded automatically to whoever's the contingent beneficiary of the estate. Mr. Mekas, I don't think there's any doubt. I mean, assume everything you just said to be accurate, that the pre-trial information, the divorce decree, and the deposition testimony indicated that the accounts were to pass to the respective parties. Matthew Mullen post-decree owned that account, and there's no doubt about that. But that's not the issue here. The issue here is the beneficiary designations. And as Justice Steigman just indicated, he was free to designate whoever he wanted as beneficiary and contingent secondary beneficiary. And for seven years up to his death, he was the account holder, no doubt about that. And he had that power to make that change. So everything you just indicated in relation to what the pleadings reflected, what the decree reflects, that he was the account holder. I don't think you will get any disagreement even from opposing counsel here. It's what happened, or more importantly, what didn't happen during the ensuing seven years. Thank you, Your Honor. The appellant agrees that the retirement funds should be dispersed initially to Miss Kelly as the named primary beneficiary under the accounts. But what the law says is the divorce decree shows that it was the intent of the parties that any interest she would have be extinguished as part of that divorce decree. Then she only receives that initial distribution or disbursement. But she has to hold it as a constructive trustee for the contingent beneficiary. In this case... Counsel, may I interject? Yes, of course. To get there, don't you have to have language finding that the expectancy interest of the divorced spouse was terminated by the court or waived by that spouse in order for you to get to that point? Some courts have employed that two-factor test that Mr. Hawk was referencing in his argument. But the primary objective here is to determine the party's intent. Courts have used that two-factor test to see if the asset was specifically identified. And then secondly, to see if there was a waiver of the expectancy or beneficial interest. But the use of that analysis or factor analysis is used to determine the intent of the parties. And so some courts use the two-factor test or analysis and some others don't. But the overarching principle is to try to determine what the party's intent was as expressed in the divorce decree and any other evidence that is available to the court. Well, the problem with hinging your argument on intent is that the owner of the policy could have very well changed the beneficiary and later reconciled with his ex-wife and again made her a beneficiary of the policy. Don't we have to look at the four corners of the policy, the language therein, to make that determination? Just intent alone, that can change. Now, let me go a step further. If in fact the court memorializes a finding on the intent and a finding that there's been a waiver or that something else occurred, that's different. But I'm not sure you've shown us that there was this finding or waiver. So again, it's our position that an explicit waiver is not required. But I think if you look at the divorce decree itself and the cases that we cite, is that a waiver can be quite broad. And it's in this case, the language in the divorce decree grants Mr. Mowen, the decedent's retirement accounts to him in his name alone. And we think that that language is broad enough so that it's enforceable and that Ms. Jamie Kelly's interest, whatever she had, was extinguished as part of that. Mr. Matkus, the cases that you referenced in your brief, the divorce decrees in those cases contained language that talked about any future interest. That the funds, the accounts would pass to the account holder and that the other party is to waive all property rights and claims, which he or she now has or may hereafter have. So that has that future language to it. In principle, mutual life insurance, each of the parties hereby releases and or waives any interest beneficial or otherwise. So a beneficial interest, which would be a future interest. This divorce decree doesn't have that future component to it. It's just that what you've identified in your brief, it's just indicating the ownership in the account is to go to either the petitioner or the respondent, and no mention is made as to any future or beneficial interest. Is that right? Well, Your Honor, it's, again, my position that the divorce decree language is so broad that it does include any present interest, but also any future interest. And the cases that we do cite, you know, this particular divorce decree probably could have been written potentially a little bit better. But we think that the language is clear in the divorce decree that it shows the intent of the parties to waive any interest. Ms. Kelly, in her deposition testimony, believed that the divorce decree awarded each individual retirement account to the owner in their name alone without reserving any kind of additional interest to the ex-spouse. Everyone seemed to agree that this was it. The ex-spouse was not going to retain any interest, including Ms. Jamie Kelly. The defendant in the case. And so we think that the divorce decree is broad enough that it also would cover any future interest or beneficial interest that the ex-spouse would have had, and that it was the intent of the parties that they each take their own retirement accounts without reserving any interest to the ex-spouse. I'll just make a point following up on your argument. And this is alluding to something Justice Steigman asked early on. Doesn't Mr. Mullen's conduct belie the fact that you say everybody agreed on the intent? Because had he agreed on the intent, reason suggests that he would have changed the beneficiaries. So, I don't know what Mr. Matthew Mullen's divorce lawyer advised him to do, whether he told him that he needed to change the, that he, that would be advisable to change the beneficiary designations. I think for a layperson reading the divorce decree and that specific provision related to the retirement account, the 401k and the pension, you know, it seems to me pretty clear that each side is going to receive their own retirement accounts and there potentially wouldn't be anything else to do at this point. I don't know, you know, if Matthew thought that he needed to do anything else and just neglected to do so because he got busy or whatever. He had a child between the time of the divorce and when he unfortunately passed away. But I think the divorce decree itself is sufficient to waive any interest that Ms. Kelly would have had in Matthew's accounts or any interest that Matthew would have had in Ms. Kelly's accounts. The other basis I just wanted to bring up briefly, which was not relied upon by the trial court in its judgment, is these two Illinois trust acts. The Herbert case that Mr. Hawk mentioned earlier, the trial court in that case found that the trust acts did apply to retirement accounts and that because of that, the beneficiary designation was automatically revoked to treat her as having pre-deceased Mr. Matthew Moen in this instance. And that only an affirmative act of recertifying the ex-spouse as a beneficiary after the divorce would be sufficient to allow the ex-spouse to receive the benefits after the decedent's death. But just briefly going back to the divorce decree itself, every case that we cited and that Mr. Hawk cited says that the primary goal of the reviewing court is to discern the party's intent related to the divorce decree. And in this case, the trial court judge found that based on the divorce decree, the divorce pretrial affidavits, the hearing on the divorce, and Ms. Kelly's deposition testimony, that the parties did intend to waive any interest and relinquish any interest that they would have in the other's retirement accounts. And so, you know, the interpretation of marital settlement agreements is a fact-specific task, and no single case, I think, is dispositive on how any individual marital settlement agreement will be reviewed. We think that the defendant's appellant improperly relies on technical factors that some courts have relied upon in trying to determine intent. But the overarching factor and the most important factor is to try to determine the party's intent and then to give effect to it. Okay, Mr. Mekas, your time is up. Mr. Hawk, do you have a rebuttal argument? Yes, thank you, Your Honors. I think it's really important to draw a distinction between analyzing the divorce decree with whether there was an intent to waive, not an intent to retain. That's not the analysis we're here to do, is whether a party was to retain that interest. And that's because the beneficiary expectancy interest arises outside of the divorce, outside of the marriage. It's not a marital interest that she gained. She gained that interest by being a designated beneficiary at Matthew's request. She had that right, it's undisputed, at the time of, in 2022, upon Matthew's death, that she still had that interest. So the question is, was there a contractual obligation she undertook within the confines of the divorce decree to specifically waive the interest? And there was not in any really shape or form. And as the questions that the court asked of opposing counsel, this case is unusual in one respect, is usually these situations you see arising when someone passes away during the process of the divorce or shortly thereafter, as if there's not enough time to make these changes. As the court points out, that certainly was not the case. There were seven years that elapsed. And I don't think there's any analysis that we have to get into of what Mr. Moen's intent were, what these parties thought. They thought he was to receive the accounts. And he did, subject to his authority to appoint anybody he wanted as a designated beneficiary. And Jamie's name remained on the account when he passed away in 2022. So unless there's something that we can point to within the divorce decree, where she specifically waived that interest, which requires language, as this court has just mentioned, in the case law, that goes far beyond any language that appears in this divorce decree. Unless that's found, it's not waived. She retains it and she's the rightful owner of these accounts. And therefore, I believe this court should reverse the decision of the trial court and grant Jamie's motion for summary judgment, while denying the motion for summary judgment by Mr. Moen. Okay, counsel, thank you for your arguments today. The court will take the case under advisement and will issue a written decision.